CASE 38.—ACTION BY HEDGES & ADAIR AGAINST THE BLUE GRASS TRACTION COMPANY FOR BREACH OF CONTRACT.—October 9, 1907.

# Blue Grass Traction Co. v. Hedges & Adair.

## Appeal from Bourbon Circuit Court.

Judgment for defendants and plaintiff appeals.— Affirmed.

1. Contracts—Action On—Sufficiency of Allegations—Acceptance. —A complaint, which sets forth both plaintiff's verbal proposition and a memorandum in writing, alleged to have been executed and delivered to plaintiff by defendant, which in terms accepts the verbal proposition, sufficiently shows acceptance.

2. Sales—Contract—Confirmation of Incomplete Instrument— Acceptance.—Where a company by a written memorandum accepts a verbal proposition to furnish material, and refuses to execute any other contract, but receives a large amount of material under the terms of the writing, it cannot avoid liability because the contract was incomplete.

3. Same—Certainty as to Subject-Matter.—A company contracting for ballast cannot assail the contract on the ground of uncertainty because the size of the ballast was not specified, where a large amount had been accepted at the time of the breach without objection; the presumption being that the remainder was to be of the same size, which was customary for the purpose for which it was needed.

4. Same—Mutuality of Obligation—"Necessary Ballast."—A contract for "necessary ballast" for a traction company's tracks in a county is not void for want of mutuality of obligation, where the necessary amount can be determined from the testimony of experts; the phrase "necessary ballast" meaning the ballast reasonably necessary to complete the road for the purposes for which it was built.

MORTON, WEBB & WILSON and B. D. BERRY for appellant.

McMILLAN & TALBOTT and DENNIS DUNDON for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER.—Affirming.

Appellees, Hedges & Adair, instituted this action against appellant, Blue Grass Traction Co. to recover damages for breach of contract in refusing to permit appellees to furnish the necessary ballast for appellant's tracks in Bourbon county, Kentucky. That portion of the petition setting forth the contract is as follows: "The plaintiffs state that in December, 1902, the plaintiffs acting by and through the plaintiff, Ollie C. Hedges, verbally proposed to the defendant to furnish the defendant necessary ballast for its track in Bourbon county, Kentucky (the defendant being then engaged in constructing a line of railway from Lexington, Kentucky, to Paris, Kentucky) at the price of one dollar ($1.00) per yard, delivered on the track, same to be measured at the crusher, work to begin as soon as the tracks were laid in Bourbon county. And plaintiffs state that the defendant executed and delivered to the plaintiff, Ollie C. Hedges, on behalf of the plaintiffs, a memorandum in writing, of date December 30th, 1902, which is hereto attached, marked "Exhibit A," in words and figures as follows:

"Lexington, Ky., Dec. 30, 1902.
"Mr. O. C. Hedges,
          "Paris, Ky.
     "Dear Sir—We hereby accept your proposition to furnish us the necessary ballast for our tracks in Bourbon county, at the price of $1 per yard, delivered on the track, same to be measured at the crusher. The contract and specifications for which will be drawn up as soon as possible and signed by both parties.          Very truly yours,
          "THE BLUE GRASS TRACTION CO.,
               "By Y. ALEXANDER,
                         "President."

The plaintiffs state that from time to time plaintiffs applied to the defendant for the contract and specifications mentioned in the memorandum, but that defendant put them off from time to time, and finally declined altogether to execute such contract and specifications on the ground that the paper which had been delivered to plaintiffs would answer the purpose stated; that the defendant's tracks in Bourbon county were and are 8.60 miles in length, and that the necessary ballast therefor was not less than one thousand (1,000) cubic yards per mile. Plaintiffs state that the plaintiffs put themselves in a position to carry out said contract by purchasing machinery, appliances, teams, etc., to the amount of about four thousand dollars ($4,000) and were ready to begin work of ballasting said road as soon as the track was laid, and plaintiff complied with their said contract as far as the defendant would permit them to do so, but that the defendant broke and violated the said contract as follows: "The petition then in paragraph 1 asks for damages for $1,140 for loss of time occasioned by the defendant's refusal to permit them to go to work for a period of seventy-six days after the time agreed upon. In paragraph 2 further damages in the sum of $900 are asked for an additional loss of time of sixty days during which defendant refused to permit plaintiffs to work. In paragraph 3 the petition states that after the plaintiffs had furnished 3,859.18 cubic yards, the defendant, without the fault of plaintiffs, refused to let them put any more ballast on said tracks, but stopped them from work; that 4,740.82 cubic yards were necessary to ballast the remainder of the tracks; that plaintiffs could have complied with the remainder of their said contract at an expense of 55 cents per cubic yard, and could have

made a profit of 45 cents per cubic yard upon 4,740.82 cubic yards, that by reason of the defendant's refusal to permit plaintiffs to comply with their contract which they were ready and willing to do, plaintiffs were damaged in the sum of $2,133, for which they asked judgment.

Defendant demurred to each paragraph of the petition. The demurrer was sustained to the first and second paragraphs, but overruled as to the third. The defendant then filed its answer denying the principal allegations of the petition, and setting up affirmatively other facts which were denied in the reply, and which it will not be necessary to refer to.

Evidence was then heard and the case submitted to the jury upon instructions which are not complained of, and a verdict for $1,200 returned in favor of appellees. A new trial was refused, and appellant prosecutes this appeal.

The following errors are assigned by counsel for appellant:

1st. That the petition fails to state that the defendant and plaintiff entered into any contract, relative to furnishing the ballast required in Bourbon county.

2nd. That the memorandum filed with the petition as an exhibit shows an incomplete contract, and one that was never fully consummated.

3rd. That said alleged contract was void for want of mutuality and was not binding.

For these reasons, appellant claims that the court erred in overruling defendant's demurrer to the petition and motion to strike out certain portions thereof, and in overruling defendant's exceptions to the testimony of various witnesses introduced for the purpose of proving the quantity of ballast that was necessary for the road. .

As to the first proposition, counsel for appellant contend that the rules of pleading which require that the contract itself as well as the breaches shall be substantially set up, are fundamental, and have neither been abrogated nor essentially modified by the Civil Code. This rule is undoubtedly true, but we are unable to see its application to this case, for the contract relied upon was not only substantially set up, but was set up in its entirety, word for word. True, the petition does not allege in terms that the verbal proposition of plaintiffs was accepted, but inasmuch as the verbal proposition is first set forth, and the petition then alleges that defendant executed and delivered the memorandum in writing which in terms accepts that very proposition, we think the acceptance was sufficiently shown, and that the objection of counsel is too technical to be considered meritorious.

As to the second proposition that the contract itself was incomplete, the learned counsel for appellant adduce many authorities which we have carefully examined. Even conceding that these authorities apply in a case as strong as this where nothing remained to be done except the formal execution of a contract prescribing the specifications, and embodying the provisions of the agreement already entered into, we are of the opinion that they are rendered inapplicable both by the pleading and proof. Considered from the standpoint of the petition alone, it alleges that the plaintiffs from time to time applied to the defendant for the contract and specifications mentioned in said memorandum, but that the defendant put them off, and finally declined altogether to execute such contract and specifications. The petition further shows that plaintiffs furnished a large amount of ballast which was accepted by the defendant. On the other

hand, if we consider the question in the light of the whole case, we find that the allegations of the petition are fully sustained by the proof. It is in evidence, and not denied, that the President of the Blue Grass Traction Co. not only refused to execute any other contract, but said to appellees, ''you have already got a contract.'' It is also in evidence that appellees furnished 3,859.18 cubic yards of ballast, all of which was delivered to and accepted by the defendant. Appellant having refused to complete the contract, and having recognized the validity of the memorandum in writing not only by telling appellees that they already had a contract, but by accepting from them a large amount of ballast delivered in accordance with the terms of the writing, can not be heard to complain of the fact that the contract was incomplete.

But counsel further complains that the contract is void for uncertainty and want of mutuality. It will be observed that the verbal proposition and the written acceptance embrace the following:

1st. The quantity, the necessary amount of ballast.

2nd. The price, one dollar per cubic yard.

3rd. The place of delivery, on the track.

4th. The place of measurement, at the crusher.

5th. The time when the work was to begin, as soon as the tracks were laid in Bourbon county.

The only element of uncertainty in regard to the contract is the size of the ballast, but in view of the fact that appellees had already furnished a large amount of ballast when the breach of the contract occurred, the presumption follows that the ballast for the remaining portion of the track was to be of the same size, or of the size usual and customary for the purpose for which it was needed. But the chief com-

plaint of counsel for appellant is of the quantity to be furnished. The want of mutuality, he claims, arises from the fact that there was no obligation resting on appellees to furnish any definite number of yards. The whole length of the tracks in Bourbon county was known or could be measured. That part of the tracks already ballasted could be ascertained. The size of the rails, the distance between the ties, and the physical conditions of the country were all known, and in the absence of any agreement as to the exact amount of ballast needed, the phrase "necessary ballast" could mean nothing more nor less than the ballast reasonably necessary to complete the road for the purpose for which it was built. This could be determined, as was done in this case, from the testimony of experts who had had experience in building roads of like character through a country of similar physical condition. The words, "necessary ballast," therefore, make the amount of ballast contracted to be delivered sufficiently certain, and if appellees had failed to carry out their contract, appellant could have sued them and recovered damages for all over one dollar per cubic yard they were required to pay for the ballast reasonably necessary to complete the road. That being the case, it is manifest that appellees are entitled to recover in this action.

Judgment affirmed.